# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK GROETEKA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17-cv-493-JPG-CJP ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Mark Groeteka, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Mr. Groeteka applied for disability benefits in January 2014, alleging disability as of May 31, 2013. After holding an evidentiary hearing, ALJ Richard N. Staples denied the application on May 3, 2016. (Tr. 11-19.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Plaintiff's Argument

Plaintiff argues that the ALJ "cherry-picked" the evidence and grossly understated the severity of the claimant's degenerative disc disease.

## Legal Standards

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act.

The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes", then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886

(7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## The Decision of the ALJ

ALJ Staples followed the five-step analytical framework described above. He determined that Mr. Groeteka had not worked at the level of substantial gainful activity since the alleged onset date and is insured for DIB through December 31, 2018. He found that plaintiff had severe impairments of peripheral vascular disease, antiphospholipid antibody syndrome with deep vein thrombosis, degenerative disc disease of the lumbar spine, idiopathic peripheral neuropathy, residual effects of a right rotator cuff repair performed on March 7, 2014, and mild chronic obstructive pulmonary disease (COPD).[1]

---

[1] "Antiphospholipid syndrome is a disorder characterized by an increased tendency to form abnormal blood clots (thromboses) that can block blood vessels." https://ghr.nlm.nih.gov/condition/antiphospholipid-syndrome, visited on February 12, 2018.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level with some physical limitations. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff could not do his past work, but he was not disabled because he was able to do other jobs which exist in significant numbers in the national and regional economies.

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's argument.

1. **Agency Forms**

Plaintiff was born in 1962 and was almost 51 years old on the alleged date of onset. (Tr. 130.) He was 5'8" and weighed 200 pounds. (Tr. 133.) He had worked as a construction laborer. (Tr. 140.)

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in March 2016. (Tr. 26.)

Plaintiff testified that his low back pain started about six or seven months prior to the hearing. He had problems reaching because of back pain. (Tr. 33-35.)

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question which corresponded to the ultimate RFC findings. The VE testified that this person could not do plaintiff's past work, but he could do other jobs such as photocopy machine operator, merchandise marker, and small parts assembler. (Tr. 38-40.)

### 3. Medical Records

Mr. Groeteka's primary care physician was Dr. Janet Alvarado.[2] In March 2015, plaintiff saw Dr. Alvarado for a new complaint of acute low back pain. He complained of moderate low back pain radiating into the bilateral buttock and bilateral lower leg. On exam, he was stooped and was limping. X-rays of the lumbar spine showed minimal grade 1 retrolisthesis of L4 on L5, moderate decrease in disc space height at L4-5 and L5-S1, and mild degenerative changes in both sacroiliac joints. The assessment was lumbar stenosis with neurogenic claudication. No specific treatment was recommended at that visit. (Tr. 448-453.)

An MRI of the lumbar spine was done in April 2015. This study showed a mild disc bulge at L2-3 without significant spinal canal narrowing; disc desiccation with mild to moderate disc bulge at L3-4, along with mild canal and foraminal narrowing without definitive nerve root impingement; disc desiccation with decreased disc space at L4-5, with possible disc tear, and central disc protrusion with no nerve root impingement. (Tr. 442-443.)

Plaintiff complained to Dr. Alvarado about back pain on three more visits in June and November 2015 and in March 2016. On each visit, Dr. Alvarado noted "Gait evaluation demonstrated stooping, limping on the right and limping on the left." (Tr. 438, 433, 554.) The assessment was lumbar stenosis with neurogenic claudication on each visit. At the June 2015 visit, Dr. Alvarado recommended either a chiropractor or physical therapy. (Tr. 438.) In November 2015, plaintiff complained of low back pain that radiated down the left leg with a tingling sensation that had lasted for about a week. She prescribed Flexeril and a Medrol Dosepack, and recommended physical therapy. She noted "Financial Authorization Requested"

---
[2] The ALJ incorrectly spelled this doctor's name as "Alverado."

for physical therapy. (Tr. 430-433.) At the last visit in March 2016, plaintiff complained of increasing memory loss as well as low back pain. Dr. Alvarado prescribed medication for his memory loss, but did not prescribe any specific treatment for low back pain. (Tr. 551-555.)

During this period, plaintiff was also seen by Dr. Josh Knolhoff for treatment of an umbilical hernia and esophagitis. In July 2015, Dr. Knolhoff performed an endoscopy procedure along with a hernia repair. He diagnosed distal esophagitis consistent with Barrett's esophagus. (Tr. 584.) On November 3, 2015, Dr. Knolhoff saw plaintiff for follow-up. In the review of systems, he noted "no back pain." Under active problems, he noted lumbar stenosis with neurogenic claudication. He recommended an endoscopy procedure with biopsy for his esophagitis. (Tr. 572-574.) That procedure was done on November 17, 2015. (Tr. 569.) Dr. Knolhoff saw him to follow up for esophagitis on November 24, 2015. Again, in the review of systems, he noted "no back pain." Under active problems, he noted lumbar stenosis with neurogenic claudication. (Tr. 561-564.)

## **Analysis**

The ALJ's discussion of plaintiff's back condition consists of one paragraph:

> MRI and x-ray testing of the claimant's lumbar spine shows that he has some degenerative disc disease without nerve impingement (Ex. 1F/27-28, 10F/6-32). An EMG/NCS performed on July 24, 2014 showed possible mild bilateral S1 radiculopathy; but it was not definitive (Ex. 12F/18). During the period of time relevant to this decision, the claimant has typically denied having back pain when he went to the doctor, but on rare occasions he had acute symptoms that lasted for short periods of time (Ex. 10F/1, 10F/19, 13F/8). For example on November 23, 2014, he complained of back pain to Dr. Alvarado, and the next day he denied having any back pain. Based on the objective medical evidence, the claimant's spinal disorder limits him to light work.

(Tr. 16.)

While it is true that an ALJ is not required to discuss every piece of evidence in the record, it is well-established that an ALJ "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (collecting cases).

The ALJ's brief discussion of the evidence regarding plaintiff's back condition was mistaken in several respects. First, Dr. Alvarado's records do not support his statement that plaintiff had "acute symptoms that lasted for short periods of time." It is true that the record from the November 2015 visit indicated that plaintiff had low back pain that radiated down the left leg with numbness and tingling for a week. (Tr. 430.) However, on that visit as on the other visits in March, June 2015 and March 2016, Dr. Alvarado described his pain as "gradual onset of constant episodes of moderate bilateral lower back pain" and also characterized his symptoms as "worsening." (Tr. 448, 435, 551.) Dr. Alvarado used the same language to describe plaintiff's symptoms at the November 2015 visit. (Tr. 430.)

Secondly, the ALJ's statement about plaintiff denying back pain the day after he saw Dr. Alvarado on November 23, 2014 is evidently a reference to the November 2015 visit to Dr. Alvarado. Plaintiff did see Dr. Knolhoff the next day and that doctor noted "no back pain" in the "review of systems" portion of his notes. Still, in the "active problems" portion of his notes, he noted lumbar stenosis with neurogenic claudication. (Tr. 561-564.) Dr. Knolhoff was treating plaintiff for esophagitis. It would not be expected that plaintiff would complain to Dr. Knolhoff about his back pain.

More importantly, the ALJ ignored Dr. Alvarado's observation that plaintiff was stooped and limping on all four visits at issue. Again, an ALJ is not permitted to "cherry-pick" the

evidence, ignoring the parts that conflict with his conclusion.  *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).   While he is not required to mention every piece of evidence, he "must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position."  *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000).

The Commissioner's brief defends the ALJ's decision by presenting an analysis of the evidence that is much more exhaustive and nuanced that the analysis offered by the ALJ. However, the ALJ's decision cannot be upheld based upon the Commissioner's after-the-fact rationalization. *Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013) ("Characteristically, and sanctionably, the government's brief violates the *Chenery* doctrine….."); *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision . . . .").

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions."  *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. The ALJ fails to build the requisite logical bridge where he relies on evidence which "does not support the propositions for which it is cited."  *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). The Court must conclude that ALJ Staples failed to build the requisite logical bridge here. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review."  *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2010) (citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits.

On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Mark Groeteka's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff.

**IT IS SO ORDERED**.

**DATE: FEBRUARY 26, 2018**

                                                 **s/ *J. Phil Gilbert***
                                                 **J. PHIL GILBERT**
                                                 **DISTRICT JUDGE**